# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JEAN BERNIER[1],
a/k/a Charles Watson,                    Plaintiff,

    v.                                        9:17-CV-254
                                                               (DNH/ATB)

KOENIGSMANN,
Chief Medical Officer, et al,

            Defendants.

---

JEAN BERNIER, Plaintiff pro se
KYLE W. STURGESS, Asst. Attorney General for Defendants.

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

   This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In this amended civil rights complaint, plaintiff alleges that the defendants denied him due process in prison disciplinary hearings, refused him necessary medical treatment for hepatitis C[2], and retaliated against him for filing inmate grievances. (Dkt. No. 64, "Am. Compl." at 5-27).  Plaintiff seeks substantial monetary relief for these alleged constitutional violations. (Am. Compl. at

---

  [1] Plaintiff commenced this action under the name Charles Watson, but requested and received permission in the Western District of New York to change his name in the caption to his alleged birth name of "Jean Bernier." (Dkt. No. 50 at 1, n.1).

  [2] Hepatitis C is a blood-borne virus that infects the liver, causing jaundice, nausea, abdominal pain, joint pain, fever, and fatigue.  Individuals with chronic hepatitis C are at increased risk for cancer, cirrhosis, and liver failure.  https://www.hhs.gov/opa/reproductive-health/sexually-transmitted-infections/hepatitis-c/index.html

27).

Presently before the court are defendants' motion for revocation of plaintiff's in forma pauperis ("IFP") status, and defendants' motion for partial dismissal.[3] (Dkt. No. 71). Plaintiff responded in opposition to both motions, and defendants filed a reply. (Dkt. Nos. 82, 89). For the following reasons, this court will recommend denial of defendant's motion to revoke plaintiff's IFP status, and will recommend granting defendants' partial motion to dismiss only with regard to plaintiff's due process claims.

## DISCUSSION

### I.    Relevant Facts[4] and Procedural History

Plaintiff commenced this proceeding in the Western District of New York, claiming that correctional officers and medical staff violated his constitutional rights while he was housed at four different prisons operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 1). Three of those prisons are located in the Northern District of New York: Cayuga Correctional Facility ("Cayuga"), Auburn Correctional Facility ("Auburn"), and Southport Correctional Facility ("Southport"). On February 15, 2017, the Honorable Hugh B. Scott, United States Magistrate Judge, granted defendants' motion to sever

---

[3] Defendants have moved to dismiss plaintiff's three due process claims and a medical indifference claim arising from the discontinuance of a three drug treatment regimen for hepatitis C in 2013. Defendants have not moved to dismiss plaintiff's medical indifference claim stemming from the denial of a different drug, Harvoni, in 2015, or plaintiff's First Amendment retaliation claims.

[4] This court is assuming the truth of the facts as stated in the amended complaint only for purposes of this motion.

plaintiff's claims arising in the Northern District and transfer them to this court. (Dkt. No. 50).

Plaintiff is an inmate who is currently housed at the Federal Medical Center in Butner, North Carolina. (Am. Compl. ¶ 1). His most recent amended complaint[5], dated April 18, 2017 and filed in this district on June 30, 2017, alleges three sets of constitutional violations: (1) a series of due process violations during disciplinary hearings at Cayuga in 2012; (2) deliberate indifference to medical treatment of plaintiff's hepatitis C by officials at Auburn and Southport in 2013 and 2015; and (3) retaliatory treatment by correctional officers at Auburn between 2013 and 2015. In order to address only the issues raised in defendants' motions, this court will limit its factual summary to the Cayuga disciplinary hearings and plaintiff's medical history.

Plaintiff has had hepatitis C for "at least twenty years." (Am. Compl. ¶ 38). While he was incarcerated at the Elmira Correctional Facility ("Elmira"), plaintiff was housed in a single cell in order to avoid potential confrontation with cellmates who would object to being exposed to a communicable disease. (*Id*. ¶ 26). On or about August 18, 2012, plaintiff was transferred from Elmira to Cayuga. (*Id*. ¶ 22). On October 17, 2017, correctional officers at Cayuga attempted to move plaintiff to a double cell that he would share with another inmate. (*Id*. ¶ 24). When plaintiff refused, he was issued a disciplinary report for failure to follow orders. (*Id*. ¶ 25).

Following a disciplinary hearing held on October 25, 2017, plaintiff was found

---

[5] Plaintiff previously amended his complaint in the Western District of New York on September 14, 2015. (Dkt. No. 20).

guilty of violating a direct order, and was sentenced to thirty days keeplock confinement, along with corresponding loss of privileges. (*Id.* ¶ 26). The following day, plaintiff again refused an assignment to a double cell, and he was again issued a disciplinary report. (*Id.* ¶ 29). At the resulting November 14, 2012 disciplinary hearing, plaintiff was found guilty and sentenced to an additional sixty days of SHU confinement. (*Id.* ¶¶ 29, 31).

Plaintiff was again ordered to house in a double cell on November 15, 2012. (*Id.* ¶ 29). Once again, plaintiff refused, and was issued a disciplinary report. (*Id.*) He was found guilty at a hearing on November 21, 2012, and sentenced to six months SHU confinement. (*Id.* ¶ 31). On December 14, 2012, plaintiff was transferred to Southport Correctional Facility, where he served his SHU confinement. (*Id.*)

While at Southport, plaintiff began a new treatment regimen for his hepatitis C. (Am. Compl. ¶ 40). The twelve week "triple combination therapy" of three drugs ran from March 15, 2013 to June 6, 2013. (*Id.* ¶ 41). Although the treatment did not show the desired improvement in plaintiff's symptoms, the specialists who oversaw plaintiff's treatment recommended a modified regimen of two drugs for an additional twelve weeks. (*Id.*) Southport medical staff administered the first two doses of this treatment on June 7, 2013 and June 14, 2013. (*Id.* ¶ 42).

On June 14, 2013, plaintiff was transferred to Auburn. (*Id.* ¶ 43). Shortly after his arrival, Auburn medical staff informed plaintiff that his hepatitis drug therapy had been discontinued. (*Id.*) As a result of this termination of treatment, plaintiff's "viral load skyrocketed," he experienced nausea, fatigue, and nightsweats, and his cirrhosis of the

4

liver worsened.  (*Id*. ¶ 56).

The Amended Complaint does not state whether plaintiff received any hepatitis treatment from June 14, 2013 until August 19, 2014.  On August 19, 2014, medical staff recommended that plaintiff begin a course of treatment with Harvoni, a newly approved drug that was scheduled to be released in October 2014. (Am. Compl. ¶ 46).  As described by plaintiff, this new drug "was remarkably successful with those patients similar" to him. (*Id*.)  Between October 2014 and February 2015, plaintiff made repeated requests to DOCCS officials to begin treatment with Harvoni. (*Id*. ¶¶ 47-50). The officials ignored all of these requests. (*Id*.)  On February 13, 2015, plaintiff was transferred to Southport. (*Id*. ¶ 60).  Again, he made repeated requests to begin treatment with Harvoni, but his requests were ignored. (*Id*. ¶¶ 60-61).

On March 9, 2015, plaintiff was transferred back to Auburn. (Am. Compl. ¶ 63). Upon his return, he requested to begin treatment with Harvoni. (*Id*.)  Ultimately, his treatment request was denied. (*Id*. ¶ 66).  Plaintiff alleges that defendant Jeavons, a nurse practitioner at Auburn, advised him that "the costs of the medication are too high to waste on an old black man and how do you like them apples . . . ." (*Id*.)

## II.    "Three Strikes" Provision of the PLRA

### A.    Legal Standards

The "three strikes" section of the Prison Litigation Reform Act ("PLRA") prohibits the filing of an IFP action when the plaintiff has had federal actions or appeals dismissed on at least three prior occasions, either for failure to state a claim or for frivolousness. 28 U.S.C. § 1915(g).  The purpose of section 1915(g) is to "stem the tide

of egregiously meritless lawsuits" by "forcing prisoners to go through the same thought process non-inmates go through before filing a suit, *i.e.* is filing this suit worth the costs?" *Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007) (citations omitted).

Section 1915(g) provides that:

> [i]n no event shall a prisoner bring **a civil action or appeal a judgment in a civil action or proceeding** [IFP] if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought **an action or appeal** in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(Emphasis added). An action may be dismissed pursuant to section 1915(g), even if the court originally granted plaintiff IFP status. *See, e.g., Gamble v. Maynard*, 9:06-CV-1543 (DNH/DEP), 2008 WL 150364, at *5 (N.D.N.Y. Jan. 14, 2008) (conditionally dismissing complaint under section 1915(g) and finding that IFP status was improvidently granted); *Luevano v. Clinton*, 5:10-CV-754 (GTS/ATB), 2010 WL 3338704, at *3 (N.D.N.Y. July 1, 2010).

If plaintiff has three strikes, section 1915(g) prevents plaintiff from prosecuting a subsequent action IFP[6] unless the plaintiff is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). This exception to section 1915(g) has been interpreted to apply only if the plaintiff faces imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002).

---

[6] A plaintiff who is subject to the three-strikes rule is not barred from filing the action, but he must pay the filing fee before the case can proceed.

Congress enacted the "imminent danger" exception to create a safety valve to prevent *impending* harms to prisoners who would otherwise be barred from proceeding IFP. *See Id.* at 563. The danger must be present when the plaintiff files his complaint. *Id*. Allegations of "ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury" may qualify for the imminent danger exception. *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004). (internal quotations omitted). However, "a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citations omitted).

### B.    Application

There is no dispute in this case that plaintiff has three strikes. In his February 15, 2017 Decision and Order, Magistrate Judge Scott identified three prior complaints or appeals filed by plaintiff which had been dismissed as frivolous or for failure to state a claim, thus qualifying as strikes under section 804 of the PLRA.[7] Although plaintiff has opposed this motion, he has stated that he "will not relitigate the three strikes finding." (Pl.'s Br. at 2).

Instead, plaintiff contends that he is still entitled to retain his IFP status in this litigation because he was in imminent danger when he filed the original complaint.

---

[7] Magistrate Judge Scott identified three frivolous actions filed by plaintiff: *Watson v. Carver-Jordan*, No. 11 CIV 2415, 2011 WL 6202899 (S.D.N.Y. Dec. 13, 2011); its subsequent appeal, Case No. 12-306 (July 5, 2012), and *Watson v. Wright*, No. 9:08-CV-62 (NAM/ATB), 2011 WL 4528931 (N.D.N.Y. Sept. 28, 2011).

7

(Pl.'s Br. at 3-7).  Plaintiff commenced this action on March 6, 2015.[8] (Dkt. No. 1).  He alleges that at the time, his hepatitis symptoms were intensifying, and defendants "refused to treat him with possible eradication treatment." (Pl.'s Br. at 4).  Plaintiff specifically identifies the recently approved drug Harvoni, which he described as "the only drug whic[h] DOCCS had for the Plaintiff on its protocol." (*Id.*)

Construing the pleadings in the light most favorable to the plaintiff, this court concludes that he has sufficiently alleged that he was in imminent danger of a serious physical injury when he filed the initial complaint.  The denial of adequate treatment for hepatitis C, a "chronic and potentially fatal disease," constitutes imminent danger.  *See, e.g., Nelson v. Dougherty*, No. 9:10-CV-1568 (DNH/DEP), 2012 WL 4026682, at *4 (N.D.N.Y. Aug. 13, 2012) (citing *Ibrahim v. Dist. of Columbia*, 463 F.3d 3, 6-7 (D.C. Cir. 2006)).  Plaintiff has alleged that he was denied Harvoni, the *only* drug which would prevent or delay further deterioration of his liver function due to cirrhosis.  He has further alleged that, at the time that this treatment was denied, his viral load was "skyrocketing," and his liver condition became more compromised. (Dkt. No. 1, at 8; Am. Compl. ¶ 68).  Such allegations, construed liberally, are more than a mere disagreement about the type of treatment being provided.  They allege a total absence of adequate treatment, and thus an imminent danger of physical injury.  *See Mitchell v. Nobles*, No. 16-12043, 2017 WL 4638018, at *4 (11th Cir. Oct. 17, 2017) (Plaintiff's complaint that he was denied Harvoni, the newest available hepatitis C drug,

_____

[8] Although plaintiff has amended his complaint twice, the statutory language of 28 U.S.C. § 1915(g) provides that the "imminent danger" exception arises at the time when the initial complaint is filed.  *See Harris v. City of New York*, 607 F.3d 18, 24  (2d Cir. 2010).

sufficiently alleged imminent danger under §1915(g) where there was no indication that his cirrhosis and other symptoms were being treated with a different medication).

Based on a finding of imminent danger with regard to the denial of treatment with Harvoni, this court recommends that plaintiff retain his IFP status in this proceeding. *See Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010) (if plaintiff adequately alleges imminent danger on some claims, the action may proceed on any other claims contained in the same complaint, even though they may lack a nexus to imminent danger). In making this recommendation regarding plaintiff's IFP status, this court reaches no conclusion on the merits of any of plaintiff's claims. *Chavis*, 618 F.3d at 169-70 (cautioning against making an "overly detailed inquiry" into whether allegations demonstrate imminent danger, because §1915(g) "concerns only a threshold procedural question."). Having addressed the IFP issue, this court will now address defendants' partial motion to dismiss.

### III.  <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.[9] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial

---

[9] Defendants have also moved to dismiss based on a lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The analysis applicable to a motion to dismiss for lack of subject matter jurisdiction is slightly different than that applicable to Rule 12(b)(6). In a motion to dismiss for lack of subject matter jurisdiction, the court is not bound by the face of the pleadings and may resolve disputed factual issues by reference to evidence outside the pleadings. *JTE Enterprises, Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338-39 (E.D.N.Y. 2014).

notice of NLRB decisions)).  *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties); *Farid v. Bouey*, 554 F. Supp. 2d 301, 313-14 (N.D.N.Y. 2008) (taking judicial notice of documents relating to plaintiff's prior Article 78 proceeding in state court).

## IV.  <u>Subject Matter Jurisdiction</u>

### A.  **Collateral Estoppel**

#### 1.  **Legal Standards**

The doctrine of collateral estoppel[10] provides that once a court has actually and necessarily decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue on a different cause of action involving a party to the

---

[10] Res judicata includes two concepts: claim preclusion and issue preclusion.  Issue preclusion is also known as collateral estoppel. *Rivera v. City of New York*, 594 F. App'x 2, 5 (2d Cir. 2014).  In claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  The doctrine bars subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) the previous action involved the plaintiff or those in privity with him, and (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.* (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  Generally, claim preclusion does not apply to bar section 1983 actions after an Article 78 proceeding. *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987); *see also Leo v. N.Y.C. Dep't of Educ.*, No. 13 CV 2271(RJD)(JMA), 2014 WL 6460704, at *4 (E.D.N.Y. Nov. 17, 2014) (res judicata doctrine did not apply to § 1983 claims because plaintiff could not have received damages for violations of his civil rights in his prior Article 78 proceeding).  In this case, defendants do not argue that claim preclusion applies.  Thus, this court will confine its discussion to collateral estoppel.

first case. *Rivera v. United States*, No. 3:10-CV-1970, 2012 WL 3043110, at *2 n.5 (D. Conn. 2012) (discussing collateral estoppel) (citations omitted).  Collateral estoppel is applicable if (1) the issues in both proceedings are identical; (2) the issue of law or fact was "actually litigated and actually decided" in the prior proceeding; (3) the party against whom preclusion is sought had a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issues were necessary to support a valid and final judgment on the merits. *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986));  *Wade v. City of Kingston*, No. 1:13-CV-623, 2014 WL 4897244, at *4 (N.D.N.Y. Sept. 30, 2014) (citing *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted)). *See also NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 184-85 (2d Cir. 2011) (discussing factors considered for collateral estoppel).

### 2.     Application

#### a.     Plaintiff's Due Process Claims

Defendants contend that plaintiff has previously litigated the same claims related to the three Cayuga disciplinary hearings in a state court Article 78 proceeding, and is therefore barred by collateral estoppel from raising the same issues in this federal civil rights action. (Dkt. No. 71-7, Def. Br. at 11).  Based upon a review of the Article 78 materials included as exhibits in support of their motion, this court agrees with defendants, and concludes that collateral estoppel applies to all of the due process claims raised in this federal proceeding.

Plaintiff commenced an Article 78 proceeding in Cayuga County Court by pro se

petition in November 2012, and he amended his petition on February 8, 2013. (Dkt. No. 71-2, Sturgess Decl., Ex. A).  In that state court proceeding against DOCCS Deputy Commissioner Joseph Bellnier, DOCCS Chief Medical Officer Carl J. Koenigsmann, and DOCCS Director of Inmate Classification and Movement Daniel Bossford, plaintiff alleged due process violations stemming from three disciplinary hearings held at Cayuga on October 25, 2012, November 14, 2012, and November 21, 2012.[11] (*Id.*)  As plaintiff explained in his Amended Petition, "all three [disciplinary hearing] determinations stem from the Petitioner's refusal to be placed in the cell with another prisoner while at Cayuga C.F.  The basis of the Petitioner's refusal is a medical order to be placed in a single cell obtained while at Elmira . . . ." (*Id*. ¶ 8).  These are the same three disciplinary hearings described in plaintiff's federal due process claims against defendants Stallone, Schenk, Morgan, and Chapin. (Am. Compl. ¶¶ 25, 29-30).

It is also evident that plaintiff's claims in this federal proceeding are identical to those previously litigated in state court.  For example, plaintiff alleged in this state court petition that:

> At the October 25, 2012 hearing, the Petitioner was denied as a witness, the doctor who had directed the single cell order.  Instead the Hearing Officer called the Cayuga doctor who testified that the Petitioner's infectious condition was not contagious and did not demand a single cell. Although the double bunk screening form includes the Petitioner's infection.

(Dkt. No. 71-2, Sturgess Decl., Ex. A, ¶ 9).  In his second amended complaint in federal

---

[11] Koenigsmann is also a defendant in this federal civil rights action.  The fact that all defendants in this proceeding were not named as parties to the Article 78 proceeding does not affect the application of collateral estoppel. *See LaFleur v. Whitman*, 300 F.3d 256, 274 (2d. Cir. 2002).

court, plaintiff reasserts the claim that

> . . . Plaintiff requested the testimony of the Elmira doctor who issued the single cell order . . . . [but this witness was] denied as being irrelevant. This rationale of the Hearing Officer is belied by the calling of the Cayuga doctor to state that the Plaintiff did not need to be single celled.  Thus, Plaintiff was denied the opportunity to present his defense on the issue and mitigate his conduct.

(*Id*. ¶ 26-28).

In the state court petition, plaintiff also described how the hearing officer denied his request to call "the analyst in Central Office who processed the transfer request from Elmira to Cayuga."  (Am. Pet. ¶ 12).  He repeats this alleged procedural defect in his federal complaint, explaining that "the purpose of the testimony was to establish that an error had been made transferring Plaintiff to a double-celled SHU, in light of the single cell order." (Am. Compl. ¶ 27).  The state court petition and the federal complaint also describe how these same procedural errors occurred at all three disciplinary hearings.  (Am. Pet. at 4-7; Am. Compl. ¶ 30).  In addition, both the state court petition and the federal complaint assert the identical claim that one of the hearing officers, defendant Chapin, was biased against plaintiff and had pre-determined the outcome of the November 21, 2012 hearing. (Am. Pet. ¶ 18; Am. Compl. ¶ 31).

The record demonstrates that the due process claims set forth in the Amended Complaint were fully litigated and actually decided in the state court Article 78 proceeding.  The New York State Attorney General's office filed a response in opposition to plaintiff's due process claims, specifically addressing the alleged denial of witnesses and the alleged bias of the hearing officer at each of the hearings.  (Sturgess

Decl., Ex. B, at 6-8).  Plaintiff filed a reply brief.[12]  (Dkt. No. 71-4, Sturgess Decl., Ex. C, at 4).

On July 8, 2013, the Honorable Mark H. Fandrich, Acting Supreme Court Justice for Cayuga County, issued a seven page Memorandum Decision and Order, denying plaintiff's Article 78 petition in its entirety. (*Id*. at 10).  This state court decision addressed each of the three disciplinary hearings separately, and found that the denial of plaintiff's requested witnesses was appropriate under the circumstances. (Sturgess Decl., Ex. C, at 8-9).  Justice Fandrich found that the physician testimony that plaintiff requested was unnecessary to resolve the issue of whether plaintiff violated orders from Cayuga correctional officers.  (*Id*. at 5).  He also found that the requested testimony of an unidentified DOCCS analyst would be duplicative of written evidence already in the hearing record. (*Id*. at 6).  The state court judge also specifically addressed plaintiff's allegations of bias, and concluded that the hearing officers conducted themselves "properly at all times," and "properly considered the merits of Petitioner's requests." (*Id*. at 5-9).  He also found that there was "no evidence that the hearing officer's decision was predetermined," with regard to the November 21, 2012 hearing. (*Id*. at 9).

Plaintiff appealed this decision to the New York State Appellate Division, Fourth Department. (Dkt. No. 71-5, Sturgess Decl., Ex. D, at 1).  The Appellate Division unanimously affirmed the lower court judgment.  *Id*.  The New York Court of Appeals subsequently denied plaintiff's motion for leave to appeal. (Dkt. No. 71-6, Sturgess

---

[12] This reply brief is mentioned in the New York State Supreme Court decision, but is not included as part of defendants' motion papers.

Decl., Ex. E, at 2).

Accordingly, the state record summarized above demonstrates that plaintiff had a full and fair opportunity to litigate his due process claims for all three disciplinary hearings at the state court level. *See, e.g., Gourdine v. Prack*, No. 9:15-CV-101 (LEK/TWD), No. 2015 WL 9487866, at *5 (N.D.N.Y. Nov. 4, 2015) (Rep't-Rec.), *adopted*, 2015 WL 9484511, at *1 (N.D.N.Y. Dec. 29, 2015). The specific findings regarding plaintiff's due process claims related to denial of witnesses and bias demonstrate that those issues were "actually decided" by the state court. It is readily apparent that plaintiff's federal court claims are "not different in any significant way" from the claims he asserted in his prior state court proceeding. *See Giakoumelos*, 88 F.3d at 59 (collateral estoppel applicable where plaintiff's claims were identical to those raised in prior Article 78 Proceeding); *Caserta v. Selsky*, No. 01-CIV-2644 (BSJ), 2002 WL 1359727, *3 (S.D.N.Y. June 20, 2002)(court compared plaintiff's Article 78 petition and prior state court decisions to federal complaint and pending motion and held that the issues had already been decided). Therefore, collateral estoppel bars further litigation of these due process claims.

Plaintiff contends that the prior state court proceeding has no bearing on this federal litigation, because the state court did not specifically decide whether plaintiff's due process rights were violated under federal law. (Dkt. No. 82, Pl.'s Br., at 10). In support of this contention, plaintiff notes that his Article 78 petition raised only state law arguments, and that the state court decision relied almost exclusively on state law. (*Id*.) This argument is not persuasive. "Section 1983, however, does not override state

16

preclusion law and guarantee [a plaintiff] a right to proceed to judgment in state court on [his] state claims and then turn to federal court for adjudication of [his] federal claims. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984); *see also Vann v. Fischer*, No. 11 Civ. 1958 (KPF), 2014 WL 4188077, at *25 (S.D.N.Y. Aug. 25, 2014) (plaintiff barred in § 1983 action from relitigating issues concerning bias and due process violations during prison disciplinary proceeding that were previously raised during Article 78 proceeding).

Plaintiff has not argued that he was prevented from introducing relevant evidence regarding the disciplinary hearings during his Article 78 proceeding, and he has not identified any new evidence that could be relevant to this proceeding. Therefore, any district court review of plaintiff's due process claims would be based on "essentially the same record . . . that the [state court] had before it." *Giakoumelos*, 88 F.3d at 61. Thus, for purposes of the collateral estoppel analysis, this court finds that plaintiff's due process claims in this action are identical to those he raised in state court; the due process issues were "actually decided" in state court; plaintiff had a full and fair opportunity for litigation of the due process issues at the state court level; and the issues litigated in state court were necessary to support a valid and final judgment on the merits. Plaintiff cannot now relitigate the claims that he lost in state court in a section 1983 action.[13] Therefore, this court recommends that all of plaintiff's due process

---

[13] The application of collateral estoppel in civil rights actions under section 1983 is in contrast to the "traditional exception to res judicata for habeas corpus review." *See Allen v. McCurry*, 449 U.S. 90, 98 n.12 (1980). Plaintiff in this case has not brought an action for habeas review and has waived any challenge to his good time under *Peralta*, thus, no exception to the application of collateral estoppel applies.

claims be dismissed.

### b.  Plaintiff's 2013 Medical Indifference Claim

Defendants also make the brief and unpersuasive argument that plaintiff's medical indifference claim arising from the discontinuance of the triple combination therapy in 2013 is barred by collateral estoppel. (Def. Br. at 3).  Although plaintiff's state court claims and the allegations in his federal complaint are similar, they do not implicate issue preclusion.

Collateral estoppel does not bar plaintiff's 2013 medical indifference claim because the issues raised in state court are not identical to those raised in plaintiff's federal complaint.  In state court, plaintiff claimed that DOCCS had not made triple combination therapy available to any inmate.  Specifically, plaintiff alleged that DOCCS was unnecessarily delaying the inclusion of triple combination therapy in its generally applicable hepatitis C treatment protocol. (Am. Pet. at 7).  In this federal proceeding, plaintiff has claimed that he was eventually allowed to receive triple combination therapy, but that the treatment was abruptly and improperly cancelled. (Am. Compl. ¶ 41).  Plaintiff alleges that he completed twelve weeks of triple combination therapy, with minimal improvement.  His physicians advised that plaintiff continue on a modified combination therapy, because it was "worth the effort at obtaining a cure." (*Id.*)  However, after plaintiff was transferred from Southport to Auburn, the Auburn medical staff summarily discontinued the treatment, resulting in a worsening of plaintiff's symptoms. (Am. Compl. ¶¶ 43-45).  Because his federal medical indifference claim focuses on the abrupt cancellation of ongoing treatment, it

raises distinct issues that were not presented to state court.

In addition, the state court did not reach a determination on the merits of plaintiff's medical claim, stating:

> Initially, Petitioner has advised in his Reply that since the commencement of this proceeding, he has received the medical treatment requested in his petition. According to Petitioner, the treatment was administered but terminated after it was unsuccessful. As a result, Petitioner's request that he be provided with a medical treatment evaluation and for a Preliminary Injunction and Temporary Restraining Order are moot. That portion of the petition and Petitioner's motion are therefore denied as moot.

(Sturgess Decl., Ex. C, at 4). Dismissal on mootness grounds has limited preclusive effect. *Hell's Kitchen Neighborhood Ass'n v. Bloomberg*, No. 05 Civ. 4806 (SHS), 2007 WL 3254393, at *4 & n. 2 (S.D.N.Y. Nov.1, 2007) (collecting cases holding that dismissal on mootness grounds is not a final determination on the merits). Therefore, this court recommends denial of defendant's motion to dismiss plaintiff's 2013 medical indifference claim.

###   B.    *Rooker-Feldman*

###      1.    **Legal Standards**

A challenge under the *Rooker Feldman*[14] doctrine asserts a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Redmond v. Bank of New York Mellon Corp.*, 697 F. App'x 23, 24 (2d Cir. Sept. 1,

---

[14] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

2017); *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also bars the federal court from considering claims, whether or not raised in state court, that assert injury based on a state judgment and seek review and reversal of that judgment. *Hensel v. City of Utica*, 6:15-CV-374 (LEK/TWD), 2016 WL 1069673, at *4 (N.D.N.Y. March 16, 2016) (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Such claims are "inextricably intertwined" with the prior state court determination. *Id.*

As applied in this circuit, four prerequisites must be met for the *Rooker Feldman* doctrine to apply: (1) the federal court plaintiff lost in state court; (2) plaintiff complains of injuries flowing from the state court judgment; (3) the action invites the district court to review and reject the state court judgment; and (4) the state court judgment was rendered prior to commencement of the federal court proceedings. *Hoblock*, 422 F.3d at 85.

### 2.    Application

Defendants contend that plaintiff's duplicative claims are also barred by *Rooker Feldman*. However, the record does not support dismissal on Rooker-Feldman grounds.

In this case, the first and fourth prongs of *Rooker Feldman* are readily met, as plaintiff lost in state court, and exhausted the state appellate process prior to commencing this federal litigation. However, *Rooker Feldman* "does not deprive a district court of subject-matter jurisdiction 'simply because a party attempts to litigate in

federal court a matter previously litigated in state court." *Hoblock*, 422 F.3d 77, 86 (2d Cir. 2005) (quoting *Exxon Mobil Corp.*, 544 U.S. at 293). Plaintiff does not complain about any injuries inflicted by the state court's decision; rather, his claims relate solely to injuries caused by DOCCS officials and employees. Therefore, plaintiff's federal claims, even where identical to his state court claims, "fall outside the narrow boundaries of *Rooker Feldman* and cannot be dismissed on those grounds." *Smythe v. Bish*, No. 9:13-CV-1288 (LEK/ATB), 2016 WL 3647693, at *5 (N.D.N.Y. July 1, 2016).

### C. Opportunity to Amend

#### 1. Legal Standard

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint.").

#### 2. Application

In this case, this court finds that any attempt by plaintiff to amend the due process claims in his complaint would be futile. If this court's recommendations are accepted, plaintiff's due process claims would remain barred by collateral estoppel. In addition,

21

plaintiff has already amended his complaint twice, asserting almost identical claims each time. Accordingly, this court recommends dismissal of plaintiff's due process claims with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to revoke plaintiff's IFP status (Dkt. No. 71) be **DENIED,** and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 71) be **GRANTED AS TO THE CLAIMS AGAINST DEFENDANTS STALLONE, SCHENK, MORGAN AND CHAPIN,** and all claims against those defendants be **DISMISSED WITH PREJUDICE**; and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 71) be **DENIED IN ALL OTHER RESPECTS**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     November 22, 2017

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

22