UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

JEAN BERNIER,
  a/k/a Charles Watson,                        Plaintiff,
       v.                                                        9:17-CV-254
                                                                          (DNH/ATB)
CARL KOENIGSMANN, et al.,
                                        Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

JEAN BERNIER, Plaintiff, pro se
JAMES A. MEGGESTO, ESQ., for Defendant Jeavons
NICOLE HAIMSON, ESQ., for the other remaining Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## DECISION and ORDER

In this civil rights action, plaintiff alleges, *inter alia*, that certain defendants refused him necessary medical treatment for hepatitis C.[1] Since February 2019, plaintiff has raised issues with respect to the sufficiency of the discovery responses of the defendants. This court addressed many of those issues during a stenographically-recorded telephone conference on June 12, 2019, and ordered the defendants to supplement various responses to plaintiff's written discovery demands. (Dkt. No. 139).[2] The court subsequently granted plaintiff's motion to reopen discovery for the limited purpose of propounding one additional document demand and one additional interrogatory directed both to defendant Koenigsmann–the former Chief Medical

---

[1] The procedural history and factual background of this action, which was originally filed in the Western District of New York, are summarized in my November 22, 2017 Report-Recommendation (Dkt. No. 96), and will not be recited here. The plaintiff subsequently filed a motion to dismiss several defendants, which District Judge Hurd granted. (Dkt. Nos. 143, 145). Another defendant thereafter died, and plaintiff has not moved to substitute that defendant's estate following the filing of a suggestion of death. (Dkt. No. 170).

[2] The transcript of the June 2019 conference is incorporated herein by reference. (Dkt. No. 167).

Officer ("CMO") of the New York Department of Corrections and Community Supervision ("DOCCS")–and defendant Jeavons–a former DOCCS Nurse Practitioner ("NP"), who was plaintiff's primary treatment provider at the Auburn Correctional Facility. (Dkt. Nos. 141, 142).

The pretrial proceedings were delayed for approximately six months to address a representation issue relating to the defendants. (*See* Dkt. Nos. 144, 146-54, 156-62; 12/3/2019 TEXT Minute Entry). The defendants, now represented by new counsel, eventually served plaintiff with the supplemental discovery responses previously ordered by this court. (Dkt. Nos. 168, 171). Plaintiff continued to have issues with the defendants' compliance with their discovery obligations. During a follow-up telephone conference, the court directed the parties to meet and confer with respect to plaintiff's objections, but authorized plaintiff to file a motion to compel if his concerns were not addressed. (2/12/2020 TEXT Minute Entry; Dkt. No. 172). By the extended deadline set by the court, plaintiff filed a motion to compel, objecting to the supplemental discovery responses of defendants Koenigsmann and Jeavons, and also moved to reopen discovery. (Dkt. No. 176). Defendants have filed affirmations in opposition to plaintiff's discovery motions. (Dkt. Nos. 178, 179).

The court concludes that defendant Koenigsmann and Jeavons did not fully comply with the court's prior directives, and orders that, in light of the deficiencies of the defendants' discovery responses, they–with the support of (DOCCS)–will be required to search for and produce additional electronically-stored and other documents

previously requested by plaintiff.[3]  However, plaintiff's motion to otherwise reopen discovery is denied.

On June 12, 2019, I ordered Dr. Koenigsmann to supplement his response to two interrogatories previously served by plaintiff and to answer one interrogatory I allowed plaintiff to add.  (Dkt. Nos. 139, 142).  I ordered NP Jeavons to supplement her response to three previously-served interrogatories and to answer the same additional interrogatory that was addressed to Dr. Koenigsmann.  (*Id*.).  During the June 12, 2019 conference, I provided additional direction to the parties in connection with supplementing their discovery responses.  While recognizing that some defendants, including Dr. Koenigsmann and NP Jeavons were former DOCCS employees, I repeatedly stressed that they had a responsibility, with the assistance of their lawyers and DOCCS counsel, to make reasonable efforts to refresh their recollections with documents relevant to the interrogatories.  (Dkt. No. 167 at 5, 7, 26).  The supplemental responses, particularly of defendants Koenigsmann and Jeavons, reflected a failure of the defendants and their lawyers to obtain and review relevant documents that could refresh the defendants' recollections as to pertinent information.  (*See, e.g.*, Jeavons's Supplemental Responses, General Statement ¶ 1, Dkt. No. 168 at 1; Koenigsmann Responses, Dkt. No. 178 at 53, 55).

Many of plaintiff's discovery requests as to which I ordered further responses

---

[3] *See, e.g., Gross v. Lunduski*, 304 F.R.D. 136, 141-44 (W.D.N.Y. 2014) (individual defendant, a DOCCS employee, had "the practical ability to access or obtain Plaintiff's requested documents from DOCCS demonstrating a sufficient degree of control over such documents to support an enforceable document request pursuant to Rule 34(a)."); *Wilson v. Hauck*, 141 F. Supp. 3d 226, 229 (W.D.N.Y. 2015) (collecting cases).

attempted to clarify the defendants' position with respect to two issues. The first issue involved the extent to which DOCCS medical staff had the discretion to prescribe Harvoni to inmates suffering from Hepatitis C after it was approved by the Food and Drug Administration ("FDA") in October 2014, but before it was added to the DOCCS drug formulary or referenced in the DOCCS hepatitis C practice guidelines in April 2015. (*See* approved supplemental interrogatory, Dkt. No. 141-2; approved supplemental document request, Dkt. No. 141-3; Dkt. No. 167 at 8-9). The second issue was why, if the absence of Harvoni in the DOCCS drug formulary or hepatitis C practice guidelines was a factor in the decision not to prescribe that medication to plaintiff or other inmates, did it take DOCCS six months after FDA approval to add Harvoni as a treatment option for its inmates. (*See* Dkt. No. 167 at 5-6, 10-11).

The responses of defendants Koenigsmann and Jeavons are artful, if not evasive, and somewhat inconsistent with respect to the key issues that the pro se plaintiff was trying to address with his interrogatories. The additional interrogatory that plaintiff was allowed to pose to these two defendants asked:

> Between October, 2014, when the FDA approved Harvoni and April, 2015, when the drug was added to DOCCS to its drug formulary, could the CMO have approved a request from a DOCCS medical provider for the drug to treat the Plaintiff, pursuant to DOCCS policies and practices?

(Dkt. No. 141-2). Defendant Koenigsmann raised numerous objections, but then responded: "prior to Harvoni being added to DOCCS's drug formulary or being incorporated into DOCCS's practice guidelines, my former office could have approved its use, but only upon request from a primary care provider." (Dkt. No. 178 at 56). The answer begs the question as to whether DOCCS *would* have ever approved or *did* it ever

4

approve treatment with Harvoni before April 2015. However, to be fair to Dr. Koenigsmann and defense counsel, the answer did track the language of the pro se plaintiff's interrogatory.

Dr. Koenigsmann also was ordered to supplement his response to plaintiff's interrogatory No. 8, which asked, in pertinent part, "Why did not the CMO direct the Auburn medical staff to see and evaluate the Plaintiff for . . . treatment with Harvoni during those months [between and including October 2014 and January 2015]." (Dkt. No. 178 at 53). After raising numerous objections, Dr. Koenigsmann responded, in pertinent part:

> I have no specific recollection of being aware that Plaintiff was seeking Harvoni treatment prior to April 2015. . . . Plaintiff's primary care providers were solely responsible for evaluating him and determining whether and when to request any Hepatitis C treatment. . . . On April 16, 2015 NP Jeavons requested for the first time that my former office approve Plaintiff for Harvoni. One day later, I approved such treatment and issued regimen instructions.[4]

(*Id.*).

In her most recent supplemental interrogatory response, NP Jeavons stated, inter alia, that she

> does not recall being asked by plaintiff to be treated with Harvoni or to have a medical hold placed while his treatment requests were being evaluated by the plaintiff in February 2015. . . . Treatment requests to the central office or medical holds were not part of any duties of [NP] Jeavons.

(Dkt. No. 175). The last sentence of NP Jeavons's response appears to contradict Dr. Koenigsmann's statements that the treating provider was solely responsible for

---

[4] To the extent these documents have not yet been produced, any correspondence or e-mails reflecting NP Jeavons's request for approval and Dr. Koenigsmann's approval in April 2015 should be disclosed to plaintiff.

recommending treatment for a patient with hepatitis C and that NP Jeavons, as plaintiff's primary care provider, made a recommendation that he be treated with Harvoni on April 16, 2015.

Nurse Jeavons justified her failure to respond to plaintiff's additional interrogatory (Dkt. No. 141-2), quoted above, by stating that "Defendant Koenigsmann answered that interrogatory in the affirmative and in fact the Plaintiff was approved treatment by Harvoni."[5] (Dkt. No. 179 at 4). However, the clear point of plaintiff's supplemental interrogatory was whether NP Jeavons understood that the DOCCS CMO could (or would) approve treatment of inmates with Harvoni during the time period between FDA approval and the time, in April 2015, when Harvoni was included in the DOCCS drug formulary and practice guidelines. The fact that treatment of plaintiff with Harvoni was approved in April 2015, after DOCCS formally incorporated that medication as a treatment option, is not responsive to the question. Moreover, plaintiff clearly wanted to determine whether NP Jeavons thought she had the option to seek Harvoni treatment for plaintiff before April 2015, not whether Dr. Koenigsmann, years after this lawsuit was filed, stated that he "could" have approved treatment with Harvoni, but only if the treating provider requested it.

The court acknowledges that interrogatory responses in federal civil actions are often artful and not particularly helpful to the propounding party. While the defendants, in my view, have taken advantage of pro se plaintiff's lack of facility in drafting

---

[5] Shortly after plaintiff was approved for treatment with Harvoni, approval was revoked because he was scheduled to be transferred into federal custody before the 12-week period required for such treatment could be completed. (*See* Dkt. No. 167 at 8-9).

6

interrogatories to avoid providing the information he is seeking,[6] I conclude that, with one exception, it would not be productive to require the defendants to, yet again, supplement their responses. I am going to direct NP Jeavons to respond to the additional interrogatory quoted above, with the understanding that plaintiff is asking, in essence, whether she thought, between October 2014 and April 2015, that she could recommend treatment of an inmate with hepatitis C with Harvoni, when that medication was not included in the DOCCS drug formulary or hepatitis C treatment guidelines.

Given the defendants' considerable success, so far, in not providing plaintiff with the information that he attempted to obtain through his written discovery demands, the court is going to direct the defendants (and DOCCS) to search for and disclose certain categories of documents, including e-mails, that plaintiff had previously requested. As attorney Haimson stated in her affidavit, she and plaintiff negotiated over search terms relating to his request for correspondence which "shows the process deliberations underwent [sic], and the factors considered to implement direct-acting antiviral drugs [("DAAs")] as part of DOCCS' arsenal." (Dkt. No. 178 at 7, ¶ 30). Counsel rejected plaintiff's efforts to narrow search terms because it would still require defense counsel or DOCCS to review "hundreds of pages of documents, which may or may not be responsive to Plaintiff's demands." (*Id.*). Given the importance of the issue of how and when DOCCS decided to start allowing treatment of inmates with Harvoni, following FDA approval, the court does not view the need to screen "hundreds of documents" as

---

[6] Normally, a litigant can overcome artful interrogatory responses by an opposing party through follow-up depositions. Plaintiff, as with most pro se inmates, is not in a position to conduct depositions of the defendants. (Dkt. No. 176 at 10).

7

unduly burdensome or disproportional to the needs of the case. So, the court will require defendants and/or DOCCS to conduct the search for documents responsive to plaintiff's request using the search terms he proposed, for the time period between and including October 2014–when the FDA approved Harvoni–and June 2017–several months after the DOCCS Pharmacy and Therapeutics ("P&T") meeting that addressed treatment with Harvoni and similar medications. While the court acknowledges that the February 17, 2017 P&T meeting was almost two years after plaintiff left DOCCS custody, that committee apparently did not previously address the use of DAAs to treat inmates. The discussions from the later period may prove relevant to DOCCS's position about using DAAs during the earlier period after Harvoni was first approved by the FDA.

  The search for documents regarding the incorporation of DAAs into DOCCS treatment arsenal for inmates with hepatitis C should also include screening, for the same time period, the e-mail account of Dr. Koenigsmann and Nancy Lyng, Director of Health Services Operations and Management, who was referred to in Dr. Koenigsmann's supplemental interrogatory responses. (Dkt. No. 178 at 53). While Attorney Haimson's affirmation suggested that a preliminary e-mail search involving the archived accounts of Dr. Koenigsmann and a former DOCCS purchasing agent yielded over 5,000 results (Dkt. No. 178 at 8-9, ¶ 36), the court is not mandating a focus on "price" or "pricing information" or the DOCCS purchasing agents, for reasons discussed below. The focus should be on finding documentation of DOCCS's decision making process and the factors considered by its senior medical and other personnel, including the costs of medication, in deciding how and when it would start treating

inmates with hepatitis C with DAAs. Hopefully, this focus will narrow the universe of potentially relevant e-mails that need to be reviewed.[7]

Plaintiff's request to reopen discovery will otherwise be denied. The court has given plaintiff reasonable opportunities to make discovery requests, including follow-up requests, and has held the defendants accountable when they have not reasonably met their discovery obligations. The new discovery plaintiff is seeking, particularly the detailed pricing information for DAAs, is not proportional to the needs of the case. Plaintiff was provided with the cost information he originally requested, which provides adequate documentation of the well-known fact that DAAs were very expensive during the relevant time period.

Plaintiff's request for a document subpoena directed to the supplier of DAAs to DOCCS for pricing information is also not proportional to the needs of the case. While litigants are, under appropriate circumstances, allowed to subpoena non-parties for relevant information, the court must be especially mindful of avoiding undue burden or expense on third parties. Fed. R. Civ. P. 45(d)(1); *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

**WHEREFORE**, based on the findings above it is

---

[7] The court is not in the best position to identify relevant e-mail custodians and search terms, given that I have not seen the content of most of the documents disclosed in discovery, to date. Assuming that defense counsel (and/or DOCCS counsel) accept that they have an obligation, as officers of the court, to conduct a reasonable search to identify documents responsive to the issues that I have identified, they may exercise some discretion with respect to search terms and other e-mail custodians whose account may be more likely to contain relevant information than that of Nancy Lyng. However, defense counsel should notify the court of any significant modification of the search protocol I have described.

**ORDERED** that plaintiff's motion to compel and to reopen discovery (Dkt. No. 176) is **GRANTED IN PART**, in that by May 29, 2020:

1. Defendant Jeavons shall respond to plaintiff's additional interrogatory (Dkt. No. 141-2).

2. To the extent these documents have not yet been produced, all non-privileged documents, including e-mails, reflecting defendant Jeavons's request for approval of treatment of plaintiff with Harvoni and/or the review and approval of that request by defendant Koenigsmann or his office, in April 2015, should be disclosed to plaintiff.

3. Defendants, with the assistance of DOCCS shall, applying the search and screening protocol discussed above, disclose to plaintiff the documents and e-mails, for the period between and including October 2014 and June 2017, that reflect DOCCS's decision making process and the factors considered by its senior medical and other personnel, including the costs of medication, in deciding how and when it would start treating inmates with hepatitis C with Harvoni and other DAAs.[8]  And, it is

**ORDERED** that plaintiff's motion to compel and to reopen discovery (Dkt. No. 176) is otherwise **DENIED.**

Dated: April 23, 2020

_Andrew T. Baxter_
Andrew T. Baxter
U.S. Magistrate Judge

---

[8] To the extent defense counsel and DOCCS reasonably require additional time to search for, screen, and disclose these documents, defense counsel shall file a status report by May 29, 2020.